744 So.2d 1175 (1999)
Richard N. FOBURG, Appellant,
v.
STATE of Florida, Appellee.
No. 97-03376.
District Court of Appeal of Florida, Second District.
November 3, 1999.
Mark A. Gruwell of Law Offices of Mark A. Gruwell, Sarasota, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
*1176 PER CURIAM.
Richard N. Foburg appeals his convictions of handling and fondling C.U., a child under the age of sixteen, in violation of section 800.04(1), Florida Statutes (1995); transmitting or showing the minor C.U. obscene material, in violation of section 847.0133; and three counts of causing or encouraging the minors C.U., M.A., and T.A. to become delinquent by giving them alcohol, in violation of section 827.04(3).[1] We hold that Foburg's convictions were tainted by the improper admission of Williams[2] rule evidence. Accordingly, we reverse Foburg's convictions and remand this cause for a new trial.
Section 90.404(2)(a), Florida Statutes (1995), sets forth the basis for admission of Williams rule evidence:
Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
In Heuring v. State, 513 So.2d 122, 124 (Fla.1987), the supreme court observed that "[t]o minimize the risk of a wrongful conviction, the similar fact evidence must meet a strict standard of relevance. The charged and collateral offenses must be not only strikingly similar, but they must also share some unique characteristic or combination of characteristics which sets them apart from other offenses." In addition to this similarity requirement, "[a] critical aspect of the test of admissibility under section 90.404(2)(a) ... [is] whether such evidence tends to prove a material fact issue that is in dispute." Thomas v. State, 599 So.2d 158, 162 (Fla. 1st DCA 1992). "Whether a relevant material fact is in issue ... must be determined from the particular facts and circumstances involved in each case, i.e., has the defendant put such fact in issue." Id. at 163.
As in Thomas, we have carefully reviewed the record to determine how the Williams rule evidence was relevant to prove a material fact in issue and how it tended to prove said disputed fact. In its opening statement at trial, the State said that it was going to present the testimony of three witnesses who had similar encounters with Foburg from 1979 through 1983 to help the jury "understand what was going on in ... [Foburg's] mind ... and the modus operandi that he was operating on in 1995 and 1996." The State also said that it would show the jury Foburg's intent with regard to the girls involved in this case by taking them back a few years. In its brief in this appeal, the State asserts that the Williams rule evidence was relevant to prove Foburg's scheme to molest young girls. However, the thrust of defense counsel's opening and closing statements at trial was that the inconsistencies in the victims' testimony revealed that the victims were not telling the truth and that the offenses did not occur. Thus, none of the reasons given by the State for introduction of the Williams rule evidence were disputed factual issues relevant to specific elements of the offenses for which Foburg was being tried. See Thomas.
Even if the State's reasons for introducing the Williams rule evidence were relevant to specific elements of the offenses with which Foburg was charged, the Williams rule evidence does not bear a striking similarity to the facts of the charged offenses, nor does it share unique characteristics with the charged offenses that set them apart from other offenses. The girls in this case all attended a middle school across the street from Foburg's residence. *1177 C.U. was eleven, M.A. was fifteen, and T.A. was approximately twelve at the time of their encounters with Foburg. They and many others would congregate in Foburg's yard and smoke cigarettes which were at times supplied by Foburg. The girls in this case would also go inside Foburg's residence and drink alcohol, which they all testified was kept in glass containers. C.U. testified that either she or Foburg would pour the alcohol. She observed three other girls, including M.A., drink alcohol at Foburg's residence. M.A. testified that she had alcohol twice at Foburg's residence and that on one of those occasions Foburg poured it. T.A. testified that she had alcohol at Foburg's residence many times but she did not think that Foburg ever poured it for her. It was her understanding, however, that Foburg knew she was drinking alcohol.
C.U. testified that, in addition to making cigarettes and alcohol available to her, Foburg showed her Playboy magazines, sexual toys, and a pornographic video. C.U. relayed that Foburg showed her a vibrator and asked if she wanted to use it. She said no, but when he insisted that she wanted to use it, she went into a room by herself and used it. C.U. testified that the last time she saw Foburg, he had reached up under her blouse and bra and touched her breast. She also testified that Foburg had told her that he wanted to have sex with her.
M.A. testified that she saw magazines and movies involving naked men at Foburg's residence. Foburg told her he would loan her a bike and a beeper and he gave her a vibrator, telling her that C.U. had one and she had used it in his garage. M.A. once went swimming at Foburg's residence in a suit provided by Foburg. He asked her to try on three different swim suits, one of which was a t-back, but she declined. T.A. witnessed this exchange.
The Williams rule witnesses all had experiences with Foburg between seventeen and twenty years earlier. L.S., who was thirty-three years old at the time of trial, testified that she babysat Foburg's son when she was thirteen. Foburg would offer her cigarettes and alcohol and he subsequently showed her sexually explicit magazines and videos. Foburg later showed L.S. a dildo and asked her if she had ever seen one before. He told her he had one just like it, and he asked her if she would like to see his. L.S. stated that Foburg was referring to his own penis. After that incident, L.S. stopped babysitting for Foburg.
C.M., who was thirty-one years old at the time of trial, testified that she was friends with the other Williams rule witness, P.D., and they both attended the same middle school as the girls in the present case. C.M. knew Foburg through P.D. She began going to his house when she was about fourteen years old. She was offered cigarettes every time she was there, as well as alcohol, which was kept in crystal decanters. Foburg knew she was drinking his alcohol, but either she or P.D. would fix their drinks. When asked if Foburg ever touched her inappropriately, C.M. stated that he hugged her a little too closely. She went swimming at Foburg's house in a swim suit he provided. The suit was not a thong suit, but she considered it revealing for the times. Foburg watched her while she swam.
P.D., who was almost thirty years old at the time of trial, testified that she lived with Foburg and his family when she was about thirteen or fourteen years of age. She was fourteen when Foburg offered her alcohol. Once every week or two, three or four of P.D.'s friends would gather at Foburg's house and they would go swimming. Cigarettes were available, but they were provided by P.D. Any time alcohol was consumed by P.D. and her friends, P.D. mixed the drinks. She was aware that sexual devices were in a drawer but Foburg never took them out and showed them to her. P.D. and a friend watched a pornographic movie at Foburg's house, but Foburg was not present. Foburg tried to become affectionate with P.D. a few times, *1178 but he ceased when she let him know that his actions made her uncomfortable. P.D. and Foburg eventually became romantically involved. Foburg let her know how he felt about her by patting her on her clothed rear end, which she conceded may have been inappropriate. P.D. did not believe that Foburg ever tried to touch her in the breast area until after their consensual sexual relationship began. P.D. stated that she was testifying against her will and that she still cares for Foburg.
We conclude that the only similarities shared by Foburg's actions toward the six girls are the presence of cigarettes and alcohol in glass decanters and the fact that all six girls were young teenagers. Although Foburg was charged in the present case with three counts of contributing to the delinquency of a minor by the giving of alcohol,[3] we are not willing to hold that seventeen to twenty-year-old evidence that Foburg made alcohol available to similarly-aged girls reveals a characteristic of his because there are no other striking similarities shared by the charged offenses and the Williams rule incidents. Heuring, 513 So.2d at 124 ("the absence of similar conduct for an extensive period of time might suggest that the conduct is no longer characteristic of the defendant."). Cf. Shapiro v. State, 696 So.2d 1321 (Fla. 4th DCA 1997) (affirming, in prosecution of psychologist for sexual misconduct, admission of testimony of Williams rule witness regarding her experience with appellant twenty years earlier because both she and victim in charged offense were separated from their husbands, neither sought sexual counseling but appellant initiated discussions about sex under the guise of it being relevant to their problems, both were complimented, and both were digitally penetrated in appellant's office during therapy sessions). Furthermore, Foburg's actions in making alcohol available to the girls variedthe girls' testimony reveals that with some of them Foburg poured the alcohol himself and with others, they or their friends poured their alcohol.
The dissimilarities between the charged offenses and the Williams rule incidents are many. Only one Williams rule witness met Foburg under circumstances similar to those under which the girls in the present case met him. There was no testimony by two of the girls in the present case, M.A. and T.A., and one of the Williams rule witnesses, L.S., that Foburg touched them. C.U. testified that Foburg reached under her shirt and bra and touched her breast. C.M. testified that Foburg's touching of her consisted of hugging her a little too tightly. P.D. testified that Foburg patted her clothed rear end, and she believed that all other touching was during their consensual sexual relationship. Foburg asked only M.A. to wear a revealing swim suit. One of the girls in the present case, T.A., and one of the Williams rule witnesses, C.M., gave no testimony regarding being shown or seeing sexual devices or magazines or videos of a sexual nature.
Accordingly, the Williams rule evidence was not uniquely factually characteristic of the charged offenses, and therefore, it was not probative of those offenses. The only purpose served by the State's introduction of the Williams rule evidence was to imply that because Foburg had committed similar acts seventeen to twenty years ago, he must have committed the acts with which he was now charged. Propensity is an improper basis for the admission of Williams rule evidence.
§ 90.404(2)(a); Heuring, 513 So.2d 122; Thomas, 599 So.2d 158; Duncan v. State, 291 So.2d 241, 243 (Fla. 2d DCA 1974). Because the Williams rule evidence was such a significant part of the State's case, *1179 its admission was not harmless error; it tainted all of Foburg's convictions.[4]
Foburg raises one other issue that requires resolution in anticipation of his retrial. Foburg contends that the trial court erred in allowing the detective to recount C.U.'s statement to him because it was a prior consistent statement and the State did not show that it was made before the existence of facts indicating bias, interest, corruption, or other motive to falsify. The State responds that defense counsel's cross-examination of C.U. and his questioning of C.U.'s mother and the detective implied that C.U.'s trial testimony was impaired by recent fabrication. The State asserts that the detective's recounting of C.U.'s statement to him rebutted this implication of recent fabrication. See § 90.801(2)(b), Fla. Stat. (1995).
In Jenkins v. State, 547 So.2d 1017, 1020 (Fla. 1st DCA 1989), the First District explained the use of prior consistent statements to rebut an express or implied charge of improper influence, motive, or recent fabrication:
There must be an initial attempt on cross-examination to demonstrate the improper influence, motive or recent fabrication and, once such an attempt has successfully occurred, then prior consistent statements are admissible on the redirect examination or through subsequent witnesses to show the consistency of the witness' [sic] trial testimony.
Defense counsel in Jenkins attempted to impeach the victim with her deposition testimony and to generally attack her credibility. The First District noted as examples that the victim had made differing statements regarding the date of the offense and whether her son was asleep or awake at the time. Defense counsel also queried the victim about why she did not immediately report the offense. The First District held that this testimony did not satisfy the prerequisites for admission of the victim's prior consistent statements:
A reasonable interpretation of the victim's cross-examination does not indicate, either expressly or implicitly, a charge of recent fabrication, improper influence or motive to falsify. Her testimony did not indicate that she was changing her story at trial; nor did the impeachment attempts establish any fact which indicated that her trial testimony was improperly influenced or that she had a motive to falsify. A witness' [sic] credibility is always an issue at trial, and a general attack on that credibility does not satisfy the hearsay exception rule.
Id. at 1021. Accord Turtle v. State, 600 So.2d 1214, 1219-1220 (Fla. 1st DCA 1992) ("[I]n this case there was no attempt on cross-examination to establish any improper influence, motive, or recent fabrication in respect to C.M.F.'s trial testimony. At best, only general inconsistencies between his testimony at trial and on pretrial deposition were shown on cross-examination.").
In the present case, defense counsel's cross-examination of C.U. consisted of impeaching or attempting to impeach her with prior inconsistent statements regarding where Foburg was (standing behind her or sitting next to her) when he touched her breast, what she told her mother in this regard, what type of shirt she had on at the time of the incident, whether she had seen a Playgirl magazine at Foburg's house, whether Foburg encouraged the girls to drink alcohol, and whether Foburg poured the alcohol himself. In a further attempt to impeach C.U., defense counsel elicited testimony from C.U.'s mother and the detective regarding what C.U. had told them, respectively, regarding where Foburg was when he touched her breast and when he did this. However, none of this testimony implies recent fabrication by C.U.; her allegations that Foburg reached under her shirt and touched her breast, showed her an obscene video, and provided *1180 her alcohol never changed. Defense counsel's queries were directed at damaging C.U.'s credibility in accordance with his position that the actions C.U. had accused Foburg of never occurred. A victim's credibility may not be bolstered by the use of her prior consistent statements. See Jenkins. Thus, there was no basis for the State's introduction of C.U.'s prior consistent statement to the detective.
Accordingly, we reverse Foburg's convictions and remand for a new trial.
WHATLEY, A.C.J., and NORTHCUTT and SALCINES, JJ., Concur.
NOTES
[1] Foburg has alleged that he was convicted of offenses with which he was not charged. We note that the only amended information in the record charges him with the offenses of which he was convicted.
[2] Williams v. State, 110 So.2d 654 (Fla.1959).
[3] Foburg was charged with contributing to the delinquency of a minor by providing alcohol and/or a sexual device but the latter alternative was not presented to the jury because the trial court granted Foburg's motion for judgment of acquittal regarding the providing of a sexual device.
[4] In this type of case, the State needs to be judicious in how the matter is presented. This error subjects the victims to the trauma of a second trial.