DICKINSON, Presiding Justice,
dissenting:
¶ 34. In order to gain a conviction of Johnny Young for sexual battery of his minor daughter, the prosecutor produced Young’s half-sister, who testified, over Young’s objection, that — twenty years earlier, when she was five and Young was fifteen — he had removed her panties and his shorts and rubbed his exposed penis on her vagina.
¶ 35. What was the prosecutor’s purpose for introducing this “prior bad-act” evidence? No one denies that the law forbids prosecutors from putting into evidence a defendant’s prior acts of misconduct for the purpose of implying that the *786 defendant acted in conformity with the prior misconduct “on a particular occasion.” [15] This evidentiary tactic — sometimes called “propensity” or “he did it before, he probably did it this time” evidence — has been forbidden since at least 1692,[16] just forty-two years after the Mayflower sailed.
¶ 36. And no one claims the purpose was covered by one of Rule 404(a)’s three exceptions. Instead, the majority concludes that the introduction of this twenty-year-old, alleged, uncharged misconduct did not offend Rule 404(a) because it was offered for a different purpose. What purpose? If the prosecutor who offered the evidence at trial knew the purpose, he kept it to himself. He provided no argument or explanation whatsoever as to the purpose of the evidence.
¶ 37. The trial judge provided no help, stating only that he was allowing the State to introduce testimony about the twenty-year-old incident with Anna for the “purpose of establishing motive, intent, plan, knowledge, identity, or absence of mistake or accident on the part of the defendant....” Interestingly, the trial judge used the conjunction “or,” implying the jurors should take their pick because he was not sure which one applied. Here are the juror’s choices:
¶ 38. Motive. Is it possible that what Anna claims Young did twenty years before provided his motive to commit sexual misconduct twenty years later? This suggests that if Young were asked why he committed this sexual battery, he would answer that he did it because, twenty years before, he had fondled his half-sister. This argument is void of logic. The prosecutor told the jurors:
The judge has instructed you to use [Anna’s] testimony for motive because none of us can wrap our minds around why a father would do this to their own child. What’s the motive there? Why? He had done it before and he was doing it again because he couldn’t help himself.
¶ 39. This bold statement — laced with honesty, but incorrectly placing a “motive” label on propensity — shows that the prosecutor’s true purpose was to say: “Young did it before, so he probably did it this time,” which fits squarely within Rule 404(a)’s prohibition. If Young’s prior bad act qualifies as “motive,” then Rule 404(a) has no purpose.
¶ 40. Intent. The use of prior bad acts to show intent is usually reserved for cases where the defendant admits doing the act, but claims it was an accident. I can think of no rational explanation as to how Young’s twenty-year-old fondling of his half-sister demonstrates that he intended to commit sexual battery on someone who, at that time, had not been born.
¶ 41. Plan. Same argument. How could Young have been planning to commit sexual battery on someone who had not even been born?
¶ 42. Knowledge. Young’s knowledge of the victim is not an issue, so knowledge of what? We are not told.
¶ 43. Identitg. Not an issue in this case. No one claims confusion about the identity of any person associated with this case.
¶ 44. Absence of mistake or accident. Again, not an issue in this case. This purpose is reserved for cases where the defendant’s defense is that what happened was an accident or mistake.
*787 ¶ 45. Again, the State never suggested to the trial judge, or to the jury, how the incident with Anna could provide proof of motive, intent, or opportunity for an incident that was not to occur for another twenty years.
¶ 46. Prior bad acts may serve to show opportunity, for instance, where a defendant presents an alibi defense to a robbery charge, claiming he was on vacation in Europe, while the prosecution has evidence that the defendant was arrested for a DUI in the same city, on the same night as the robbery.[17] Rule 404(b) would permit the prosecution to admit this evidence to show that the defendant had the opportunity to commit the robbery.[18] And in a prosecution for assault "with a gun, evidence that the defendant stole the gun from a pawn shop certainly would be admissible to show preparation and opportunity. But neither opportunity nor preparation is at issue here.
¶ 47. The prosecutor clearly used Rule 404(b) as a pretext to gain admission of propensity evidence. As stated by one author:
If Rule 404(b) is used as a pretext for the introduction and misuse of character evidence at trial, the potential prejudice to the accused is substantial. The jury could decide the case based on propensity evidence, short-circuiting the burden of proof and effectively holding the accused liable for all his past misdeeds. The constraints posed by Rule 404(a) and Rule 405 could, moreover, prevent the accused from mounting an effective defense by first requiring him to identify a pertinent character trait to defend and then limiting him to proof by reputation or opinion testimony.[19]
¶ 48. Here, the State introduced the evidence to prove that Young had the propensity to commit the same act again. Rule 404(b)’s alternative purposes were chanted as a pretext. The past sexual act (with Anna) and the crime charged (with Cindy) were too remote in time, and too dissimilar, to satisfy any of Rule 404(b)’s noncharacter purposes. We stated clearly in Gore v. State that past sexual acts bearing “substantial resemblance to each other and the present offense” may make the evidence of prior sexual misconduct admissible.[20] But our statement in Gore assumes the State has a legitimate Rule 404(b) purpose for the evidence.
¶ 49. In Green v. State, for instance, the majority found that the defendant’s prior sexual conduct bore “striking” similarities to the charged crime: sexual abuse of female family members of the same or similar family relationships to the defendant; same or similar acts; same or similar locations; and same or similar ages of the victims.[21]
¶ 50. Here, the State produced no evidence that Young’s single, prior sexual act, which occurred twenty years earlier, bore a “substantial resemblance” to the crime alleged in this case. And the State likewise articulated no legitimate purpose under Rule 404(b). The majority places great evidentiary value on the fact that the victims were of similar age. But given the twenty-year lapse of time between the incidents, demonstrating nothing more than similar age of the victims does not rise to *788 the “substantial resemblance” and “striking resemblance” standards set out in Der-ouen, Green, and Gore.
¶ 51. It is hornbook law that Rule 404(b) forbids the use of prior bad acts to imply or prove a defendant’s propensity to commit similar acts. The majority — borrowing language from a Louisiana appellate court[22] — unashamedly argues that the State was free to do exactly what Rule 404(b) forbids.
¶ 52. According to the majority, Young had a “seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles,” and both assaults were part of a “common plan, scheme, or system” that involved Young taking advantage of familial relationships to engage in sexual activities with prepubescent girls. The majority’s hypothesis — the majority came up with this idea because the prosecution never argued it at trial, and it is nowhere in the record — that a single sexual act that allegedly occurred twenty years ago was part of a “common plan, scheme, or system” to commit a second act twenty years later; or that it demonstrates a “seemingly uncontrollable desire to partake in pedophilic sexual activities” is indefensible.
¶ 53. The simple truth is, the trial court abused its discretion by admitting the evidence without a legitimate, noncharacter purpose for admissibility and by allowing the State to imply in closing argument that such evidence could be used to imply that, because Young had abused Anna, he probably had abused Cindy. And because the trial court’s error prejudiced Young’s ability to defend his case, the error requires reversal.

Nurse Thomas

¶ 54. Nurse Thomas testified repeatedly regarding causation and beyond her disclosed opinions. But the majority does not address the trial court’s ruling regarding Nurse Thomas’s undisclosed opinions— perhaps because Young inartfully raised the issue. I believe this Court should address the issue, and I would find that the trial court erred by allowing Nurse Thomas to testify concerning undisclosed opinions.
¶ 55. I would also find that the trial court erred by allowing Nurse Thomas to testify concerning the cause of Cindy’s injuries. This Court has held unequivocally that nurses cannot testify as to medical causation.[23] In Richardson v. Methodist Hospital of Hattiesburg, Inc., we held that a nurse lacks the qualifications necessary to establish a causal connection between a nurse’s standard of care and the cause of death.[24] And in Vaughn v. Mississippi Baptist Medical Center, we further explained a nurse’s limitations, holding that medical diagnosis and causation are outside a nurse’s qualifications.[25] More specifically, we held that a nurse could not testify to “diagnostic impressions or as to the cause of a particular infectious disease or illness.”[26]
¶ 56. The majority, however, finds that Nurse Thomas did not provide causation testimony. I disagree. Her testimony clearly asserted her opinion of the cause of Cindy’s injuries: “blunt penetrating trauma of the vaginal area and the anal *789 area.” The majority’s suggestion that an opinion of “consistent with” does not equal an opinion of causation is simply unsupported in logic or the law. If Nurse Thomas’s purpose in testifying that the injuries were consistent with blunt-force trauma was not to say that blunt-force trauma caused the injuries, then what was the purpose?
¶ 57. The majority, citing Harden v. State,[27] also suggests that this Court already has allowed SANE nurse testimony of this nature. But because we did not address this issue in Harden, that case is irrelevant to today’s analysis. And Young — as opposed to the defendant in Harden — actually raised the issue.
¶ 58. Because I agree with our holdings in Richardson and Vaughn, which both prohibit a nurse from testifying to medical causation, I would find that the trial court improperly allowed Nurse Thomas to testify concerning medical causation.
¶ 59. Unfortunately, the majority’s opinion provides greater protection to civil defendants (where plaintiffs need only prove their case by a preponderance of the evidence) than it does to the accused (where the prosecution must prove its case beyond a reasonable doubt). Thus, the majority’s holding creates an unbalanced rule of law, and I cannot accept it.
CHANDLER, J., JOINS THIS OPINION. KITCHENS AND KING, JJ., JOIN THIS OPINION IN PART.

. Miss. R. Evid. 404(a).

. Harrison's Trial, 12 How. St. Tr. 834 (Old Bailey 1692).

. Christopher W. Behan, Evidence and the Advocate: A Conceptual Approach to Learning Evidence 174 (2012).

. Id.

. Id. at 173 (2012).

. Gore v. State, 37 So.3d 1178, 1187 (Miss.2010) (emphasis added).

. Green v. State, 89 So.3d 543, 552 (Miss.2012).

. Gore, 37 So.3d at 1186 (quoting State v. Driggers, 554 So.2d 720, 726 (La.Ct.App.1989)).

. Vaughn v. Miss. Baptist Med. Ctr., 20 So.3d 645, 652 (Miss.2009).

. Richardson v. Methodist Hosp. of Hattiesburg, Inc., 807 So.2d 1244, 1248 (Miss.2002).

. Vaughn, 20 So.3d at 652.

. Id.

. Harden v. State, 59 So.3d 594 (Miss.2011).