ISHEE, J.,
 

 for the Court:
 

 ¶ 1. Michael Fountain was convicted in the Jackson County Circuit Court of four counts of sexual battery; sentenced to thirty years for each count with the sentences to run concurrently with one another, all in the custody of the Mississippi Department of Corrections (MDOC) without eligibility for parole or probation; and fined $10,000 for each count. Fountain appeals his conviction arguing: (1) the trial court abused its discretion by allowing KU.’s
 
 [1]
 
 testimony under the exceptions in Mississippi Rule of Evidence 404(b); (2) the trial court abused its discretion by excluding evidence of M.G.’s false allegation against her step-brother, Chad Gol-lott; (3) there was plain error in two of the jury instructions given by the trial court; and (4) the verdict is contrary to the overwhelming weight of the evidence and is not supported by sufficient evidence. Finding no reversible error, we affirm.
 

 
 *916
 
 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. In 2006, M.G. lived with her father, Danny Gollott, her father’s then-girlfriend, Michelle Surian
 
 [2]
 
 , and her half-brother, Destín Gollott. M.G. knew Fountain because he was her cousin. He also worked with M.G.’s grandmother at a family business, and Fountain’s mother, Iris, lived next to M.G.’s grandmother. Fountain bought M.G. presents, including a cell phone and an Ipod; he also occasionally gave her money. M.G. began to spend time with Fountain at his house, at the warehouse where he worked, and at Iris’s house. M.G. stated that when she first began spending time with Fountain, she and Fountain ate pizza and watched television at Fountain’s house.
 

 ¶ 3. M.G. testified that Fountain began sexually abusing her after she confided in him that her half-brother, Destín, had sexually assaulted her. M.G. was nine years old at the time. The sexual abuse by Fountain occurred at Fountain’s house, his office at the warehouse, and at Iris’s house. According to M.G., it was during the initial stages of abuse that Fountain told her about his sexual relations with his step-daughter, K.U. He also showed M.G. sexually explicit vidéos of K.U. in addition to various other nude photographs. M.G. testified that Fountain had sexual intercourse with her, that he had placed his mouth on her vagina, and that he had inserted his penis into her mouth. She also testified to the use of vibrators during the sexual abuse and to his use of condoms.
 

 ¶ 4. In early 2008, M.G. told Surian, her father’s then-girlfriend, that Destín had sexually assaulted her. Surian then took M.G. to the emergency room. After the emergency-room visit, M.G. revealed to Surian that Fountain had been sexually assaulting her. M.G. was then removed from her home by the Department of Human Services (DHS).
 

 ¶ 5. In April 2008, a Jackson County grand jury indicted Fountain on four counts of sexual battery occurring from January 1, 2006, through January 18, 2008. Prior to trial, both the State and Fountain filed motions in limine. The State sought to exclude evidence of M.G.’s past allegations of sexual abuse by persons other than Fountain. The trial court excluded the evidence based on Fountain’s failure to comply with the notice requirements in Mississippi Rule of Evidence 412(c). In his motion in limine, Fountain sought to exclude evidence of prior acts of a sexual nature with his step-daughter, K.U. The trial court denied Fountain’s motion and permitted the evidence under Mississippi Rule of Evidence 404(b). A jury trial then began on May 25, 2010.
 

 ¶ 6. The jury heard the testimony of Terry Hines, an investigator with the Ocean Springs Police Department. He testified regarding the search of Fountain’s residence. During the execution of the search warrant, police officers found vibrators and nude photos in a dresser where M.Q. described they would be located. The officers also found condoms in Fountain’s bathroom and night stand. Although no videos of K.U. were found, the closet shelf on which M.G. said they would be located appeared to have had items recently removed. Investigator Hines also described Fountain’s nipple piercing, which M.G. had disclosed during her testimony.
 

 ¶ 7. The jury also heard the testimony of two nurses, Melanie Gaston and Edwina Roland, who had examined M.G. on sepa
 
 *917
 
 rate occasions. Gaston, a nurse practitioner at Biloxi Regional Medical Center, examined M.G. on January 18, 2008. M.G. arrived at the hospital complaining of a headache, gastric burning, and leg pain. Gaston then performed a visual gynecological exam of M.G. based on her complaints of gastric burning. Gaston noted M.G.’s hymen was not intact, but there was no swelling, nor any bruising, tears, abscesses, or blisters. However, according to Ga-ston, this was not unusual “because the last [instance of sexual abuse] was two weeks [prior to the exam] or greater.” Gaston was referring to the alleged abuse by Destín. Because of this testimony, the trial court allowed testimony about M.G.’s accusations against Destín.
 

 ¶ 8. Roland, a registered nurse at Kees-ler Medical Center, examined M.G. on January 28, 2008, per the request of DHS. Roland also found no evidence of trauma. However, M.G. did reveal to Roland that she was assaulted by Fountain and Destín. M.G. also told Roland that Fountain videotaped her using a vibrator on several occasions.
 

 ¶ 9. K.U. also testified during the trial. She testified that she began to live with Fountain after he and her mother had divorced. According to K.U., Fountain began sexually abusing her when she was in the fifth grade. She testified the inappropriate behavior began as playing, which led to touching and feeling, and eventually progressed to sex. In addition, K.U. testified she would occasionally see Fountain watching pornography and masturbating in the living room. When she walked in the living room on those occasions, Fountain did not stop what he was doing. She further acknowledged the abuse continued until she was in her twenties.
 

 ¶ 10. Fountain took the stand in his own defense. He denied M.G.’s allegation and also denied any sexual abuse of K.U. He said a sexual relationship with K.U. began after she had graduated high school. Fountain admitted he was alone with M.G. on several occasions, bought her some gifts, and gave her money. He further testified that M.G. knew where the vibrators and nude photographs were located in his house because she liked to look in drawers. Fountain did not remember M.G. telling him about the alleged sexual assault by Destín, and he claimed that M.G. fabricated stories.
 

 ¶ 11. The jury convicted Fountain of four counts of sexual battery. He was sentenced to thirty years for each count with the sentences to run concurrently with one another, all in the custody of the MDOC without eligibility for parole or probation. In addition, he was ordered to pay fines in the amount of $10,000 for each count. Fountain now appeals.
 

 DISCUSSION
 

 ¶ 12. On appeal, Fountain argues: (1) the trial court abused its discretion by allowing K.U.’s testimony under the exceptions in Mississippi Rule of Evidence 404(b); (2) the trial court abused its discretion by excluding evidence of M.G.’s false allegation against her step-brother, Chad; (3) there is plain error in two of the jury instructions given by the trial court; and (4) the verdict is contrary to the overwhelming weight of the evidence and is not supported by sufficient evidence.
 

 I. Admission of Prior Alleged Acts of Misconduct
 

 ¶ 13. “A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, the [appellate court] will not reverse this ruling.”
 
 Gore v. State,
 
 37 So.3d 1178, 1183 (¶ 13) (Miss.
 
 *918
 
 2010) (quoting Price
 
 v. State,
 
 898 So.2d 641, 653 (¶29) (Miss.2005)).
 

 ¶ 14. Fountain asserts the trial court abused its discretion by admitting the testimony of K.U. in which she spoke about Fountain’s prior sexual abuse. He makes the following arguments regarding the introduction of this evidence: (1) the Mississippi Supreme Court’s holding in
 
 Derouen v. State,
 
 994 So.2d 748 (Miss.2008), does not render this type of evidence per se admissible; (2) the prejudicial effect of the testimony greatly outweighs any probative value; (3) the limiting jury instruction did not eliminate the prejudice inherent in the testimony; (4) the allegations were too remote in time and dissimilar in detail to be relevant to the current charge; and (5) the testimony violated his right to a fair trial.
 

 ¶ 15. Prior to trial, Fountain filed a motion in limine seeking to prohibit the State from introducing evidence of his pri- or sexual acts with K.U. In KU.’s testimony, she alleged Fountain began to sexually abuse her when she was in the fifth grade, and the sexual acts continued until adulthood, at which point the relationship became consensual. The State sought to introduce the evidence under the standard announced in
 
 Derouen.
 
 Fountain claimed M.G.’s accusations have no connection to K.U.’s testimony, and K.U.’s testimony would only serve to show he acted in conformity with his prior acts. He further argued the probative value of the testimony is substantially outweighed by the danger of unfair prejudice. The trial court denied Fountain’s motion in limine. The trial court found KU.’s testimony was relevant to the current case and its probative value was not substantially outweighed by the danger of unfair prejudice.
 

 A.
 
 Derouen
 
 Standard
 

 ¶ 16. In
 
 Derouen,
 
 the Mississippi Supreme Court held that evidence of a sexual offense other than the one charged, involving a victim other than the victim of the charged offense, “if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury, should not be considered per se error.”
 
 Derouen,
 
 994 So.2d at 756 (¶ 20).
 
 Derouen
 
 overruled the holding in
 
 Mitchell v. State,
 
 539 So.2d 1366 (Miss. 1989), later reaffirmed in
 
 Lambert v. State,
 
 724 So.2d 392 (Miss.1998), which had found the admission of this type of evidence was per se reversible error.
 
 Derouen,
 
 994 So.2d at 754 (¶ 17) (citing
 
 Lambert,
 
 724 So.2d at 394 (¶ 7)). In overruling those cases, the supreme court stated: “[W]e find that our holding in
 
 Mitchell,
 
 reaffirmed in
 
 Lambert,
 
 does irreversible harm to the most innocent and defenseless in society — our young children.”
 
 Id.
 
 at 755-56 (¶ 18). The supreme court further acknowledged the standard established in those cases had “eliminat[ed] the balancing test required under Rule 403 ... [which] is totally contrary to our rules of evidence and well-established case law.”
 
 Id.
 
 at 756 (¶ 18) (citations omitted).
 

 ¶ 17. Fountain argues that although the holding in
 
 Derouen
 
 removed the per-se-inadmissibility standard regarding evidence of a separate sexual offense involving a different victim,
 
 Derouen
 
 does not render that type of evidence per se admissible. We agree with Fountain that it is clear
 
 Derouen
 
 did not make this type of evidence per se admissible. The
 
 Der-ouen
 
 standard states the evidence is only admissible “if properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury.”
 
 Id.
 
 at (¶ 20). In the instant case, the trial court followed the standard an
 
 *919
 
 nounced in
 
 Derouen
 
 and properly admitted the evidence.
 

 ¶ 18. The evidence was properly admitted under Rule 404(b). Rule 404(b) states:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 

 In deciding to admit KU.’s testimony, the trial judge stated:
 

 The nature of the sex abuse, sexual activity testified to by [K.U.] is similar in nature as to the use of pornography or the existence of pornography, and [Fountain’s] interest in pornography, [and it is] consistent [with] the use of condoms in statements by the victim. I believe it’s relevant to the issues of the licentious nature of [Fountain] in the charges lodged here. I think it would be relevant to [the] opportunity of [Fountain] to engage in such conduct. It would be corroborative of the statements and some of the testimony of the victim here, as I’ve been informed of.
 

 Under Rule 404(b), KU.’s testimony could not be presented to show “conformity therewith.” However, the testimony could be used to show “proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” M.R.E. 404(b). There are several similarities between the two allegations of abuse: both victims were the same age when the abuse took place; Fountain gave both of the victims gifts and money; and several of the sexual acts were the same. The abuse of M.G. also began around the same time K.U. left for college. Furthermore, Fountain used his abuse of K.U. to groom M.G. as part of his general preparation or plan. As the trial judge noted, the licentious nature of the allegations show a motive to engage in the type of activity alleged. Thus, this evidence is permitted under Rule 404(b).
 

 ¶ 19.
 
 Derouen
 
 also requires that the trial court perform a Rule 403 balancing test before admitting the evidence. Rule 403 states: “Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” In this case, the trial court conducted the requisite balancing test and determined the testimony should be allowed.
 

 ¶ 20. In
 
 Derouen,
 
 when discussing the admissibility of evidence of this nature, the supreme court cites the dissent in
 
 Lambert
 
 in its entirety. In arguing its probative value outweighs the danger of unfair prejudice, the dissent in
 
 Lambert
 
 stated the following:
 

 Sex crimes against children are furtive, secret events usually lacking evidence other than the conflicting testimony of the defendant and the victim. The only viable proof of motive, intent, plan, knowledge, identity or absence of mistake or accident may be the pattern of abuse suffered by others at the hands of the defendant.
 

 Lambert,
 
 724 So.2d at 395 (¶ 14) (Mills, J., dissenting, joined by Roberts and Smith, JJ.). Thus, the necessity of this type of evidence in cases involving sex crimes against children establishes their probative value. In most instances, as in the case at hand, evidence of a sexual offense other than the one charged, by a victim other than the victim of the charged offense, is the only evidence to show “proof of motive,
 
 *920
 
 opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” M.R.E. 404(b). In this case, M.G. testified that the first time Fountain had sexual intercourse with her, Fountain told M.G. he had done the same thing to K.U. when she was nine. He also showed M.G. several explicit videos of K.U. This established his plan or preparation in using his abuse of K.U. to further his abuse of others. Furthermore, his prior actions show a motive to engage in the type of act alleged. These facts could not be established without K.U.’s testimony. Thus, the probative value of the evidence outweighs any prejudicial effect the evidence may possess.
 

 ¶ 21. Finally, the trial court, after deciding to admit the testimony, issued an appropriately drafted limiting or cautionary instruction to the jury. The trial court issued the following jury instruction:
 

 The court instructs the Jury that the testimony of other acts as to a child which is not the subject of the Indictment being charged in this case is not evidence that the Defendant actually committed the crime charged herein or that the Defendant has a certain character and he acted in conformity therewith. Rather, the evidence, if proven beyond a reasonable doubt, may be considered, if you so determine, as to the Defendant’s motive, opportunity, intent, preparation^] and/or plan to commit the act for which he stands charged.
 

 Fountain argues that in cases involving evidence of a separate bad act of a sexual nature against a different child, even a properly drawn limiting instruction cannot be followed by jurors. This argument is flawed. Under Fountain’s argument, no limiting instruction would ever suffice in cases involving evidence of prior sexual acts against a victim other than the one bringing the current charges. This is clearly untrue. Otherwise, the supreme court in
 
 Derouen
 
 would not have made the limiting jury instruction a requirement in admitting this type of evidence. Thus, we find the trial court issued the type of appropriate limiting instruction intended by
 
 Derouen.
 
 This issue is without merit.
 

 B. Relevance of Prior Acts
 

 ¶ 22. Fountain next argues the allegations in K.U.’s testimony were too remote in time to be relevant to the current case. The abuse alleged by K.U. occurred between sixteen and seventeen years prior to the trial in the instant case. In
 
 Gore v. State,
 
 37 So.3d 1178 (Miss.2010), the supreme court allowed evidence of the defendant’s prior sexual abuse of a different victim that occurred seven years before the abuse of the victim in the case. The
 
 Gore
 
 court cited the following cases from various jurisdictions:
 
 United States v. Hadley,
 
 918 F.2d 848 (9th Cir.1990) (admitted evidence of other crimes occurring up to fifteen years prior to the crime for which the defendant was charged);
 
 Ex parte Register,
 
 680 So.2d 225 (Ala.1994) (allowed testimony of defendant’s daughter regarding improper conduct that occurred seven to nine years previously);
 
 State v. Jackson,
 
 625 So.2d 146 (La.1993) (permitted evidence of other crimes that occurred twenty-four years previously);
 
 State v. Driggers,
 
 554 So.2d 720 (La.Ct.App.1989) (allowed admission of evidence of other acts that had occurred seven to twenty-six years previously). In
 
 Driggers,
 
 the Louisiana Court of Appeals reasoned that “even though the other[-]crimes evidence may appear to be remote in time in some instances, the incidents are all within the same time period in terms of the victims’ lives because all of the victims were essentially pre-pubescent.”
 
 Gore,
 
 37 So.3d at 1186 (¶ 19) (quoting
 
 Driggers,
 
 554 So.2d at 727). Based on the age of the M.G. and K.U. when the abuse occurred, the timing
 
 *921
 
 of the abuse of M.G. in relation to K.U. leaving for college, and the overwhelming amount of case law, we find KU.’s testimony was not too remote in time to be relevant.
 

 ¶ 23. Fountain further argues the assertions in KU.’s testimony were too dissimilar to M.G.’s case to permit admission. However, several facts within the testimony of each victim are similar in nature. There are also consistencies in the manner in which the abuse occurred. In both instances of abuse, the victims were approximately the same age; in both cases Fountain bought the victims presents and gave them money; and in both cases Fountain used pornography. Also, as discussed above, Fountain used his pri- or abuse of K.U. to aid in his abuse of M.G. Small variations in the type of abuse, such as using a vibrator in one instance and not in the other, will not make the two cases too dissimilar to be relevant. Accordingly, we find HU.’s testimony relevant to the current charge.
 

 C. Fair Trial
 

 ¶ 24. In Fountain’s final argument regarding K.U.’s testimony, he claims the testimony violated his right to a fair trial. First, Fountain discusses the emotional impact of her testimony. He asserts the testimony about her dependence on Fountain and her emotional reaction when testifying about the abuse in support of this argument. Next, he argues KU.’s testimony regarding his masturbation and use of pornography was irrelevant and inflamed the jury. Finally, he argues K.U.’s testimony was the most compelling evidence against him, and the State used it as a key piece of evidence of his guilt.
 

 ¶ 25. To begin, Fountain cites no legal authority in his argument relating to his right to a fair trial. “Failure to cite relevant authority obviates the appellate court’s obligation to review such issues.”
 
 Simmons v. State,
 
 805 So.2d 452, 487 (¶ 90) (Miss.2001) (citing
 
 Williams v. State,
 
 708 So.2d 1358, 1362-63 (Miss.1998)). Furthermore, we have already addressed the relevance and admissibility of the testimony. The testimony was properly admitted and did not violate Fountain’s right to a fair trial. This issue is without merit.
 

 II. Exclusion of False Allegations
 

 ¶ 26. Prior to trial, the State filed a motion in limine seeking to exclude the introduction of evidence regarding M.G.’s past allegations of sexual assault against persons other than Fountain. M.G. previously reported that her half-brother, Des-tín Gollott, had raped her and that her step-brother, Chad Gollott, had assaulted her. Fountain sought to introduce this evidence under Mississippi Rule of Evidence 412(b)(2)(c) as a false allegation by M.G. of a past sexual offense. The State moved to exclude the evidence under Rule 412(c). Rule 412(c)(1) requires the party seeking to admit such evidence to file a written motion no later than fifteen days before trial, unless the “evidence is newly discovered and could not have been obtained earlier through the exercise of due diligencef.]”
 

 ¶ 27. During discovery, the State provided Fountain with information regarding M.G.’s prior accusations. However, Fountain argued the evidence he sought to introduce was newly discovered because he did not receive Chad’s videotaped denial of the accusation until one day before trial and, therefore, he was unable to meet the fifteen-day notice requirement. Although Fountain argued the false allegations made by M.G. were newly discovered evidence, the trial court held the evidence was not newly discovered. The trial court stated: “It is conceded that the fact of this allegation was previously disclosed in discovery,
 
 *922
 
 and the fact that the alleged perpetrator denied the same adds little to the argument in favor of its admission.” The trial court found that Fountain failed to comply with the requirements of Rule 412(c). Therefore, the trial court granted the State’s motion in limine.
 

 ¶ 28. During the trial, M.G.’s accusations against Destín were introduced when the evidence became relevant during the testimony of medical personnel. Thus, on appeal, Fountain only argues the trial court erred by excluding evidence of M.G.’s supposedly false allegation against Chad. Citing
 
 Williams v. State,
 
 54 So.3d 212 (Miss.2011), Fountain argues the exclusion of evidence tending to support his theory of defense is too harsh a sanction for discovery violations, without the trial court finding he failed to disclose the evidence with the intent to gain a tactical advantage. However, “[t]he admission or exclusion of evidence constitutes reversible error only where a party can show prejudice or harm.”
 
 Id.
 
 at 216 (¶ 14) (citing
 
 Ross v. State,
 
 954 So.2d 968, 1001 (Miss. 2007)).
 

 ¶ 29. We have previously upheld the exclusion of testimony based on Rule 412 violations of the same nature as is present in this case. In
 
 Lofton v. State,
 
 818 So.2d 1229, 1233 (¶ 14) (Miss.Ct.App.2002), the defendant, Matthew Lofton, sought to introduce evidence under Rule 412(b)(2)(C), that the victim, M.M., had previously accused her father of fondling her, an allegation the victim later told the grand jury was untrue. M.M. later explained the reason she had denied the allegation and confirmed the allegations as true.
 
 Id.
 
 The trial court excluded the evidence because Lofton failed to comply with the fifteen-day notice requirement in Rule 412(c).
 
 Id.
 
 at 1233 (¶ 15). On appeal, this Court affirmed the exclusion of the evidence finding the trial court’s exclusion of the evidence “could not have affected the judgment and therefore is not reversible error.”
 
 Id.
 
 at 1235 (¶22) (citation omitted).
 

 ¶ 30. In
 
 Levy v. State,
 
 724 So.2d 405, 408 (¶ 18) (Miss.Ct.App.1998), the defendant sought to introduce evidence of the victim’s past sexual behavior. The trial court excluded the evidence.
 
 Id.
 
 On appeal, this Court held the trial court’s exclusion of the evidence was not reversible error because of the defendant’s failure to give timely notice or qualify for a procedural exception under Rule 412(c).
 
 Id.
 
 at 409 (¶ 19).
 

 ¶ 31. Fountain admittedly did not comply with the fifteen-day notice requirement of Rule 412(c). He also does not fall within one of the procedural exceptions. Although he argues the videotape of Chad denying the allegations is newly discovered evidence, we find the evidence of M.G.’s allegation against Chad was not newly discovered evidence. Furthermore, the tape adds little, if any, value to Fountain’s defense. The accusations against Chad were not the only source of evidence to support Fountain’s theory of defense. M.G.’s allegations against Destín served the same purpose, and those allegations were introduced during the trial. Thus, the exclusion of Chad’s testimony did not prejudice or harm Fountain’s theory of defense. The jury returned a guilty verdict despite hearing other evidence of M.G.’s prior allegations of abuse.
 

 ¶ 32. We find the exclusion of this evidence did not prejudice Fountain or affect the judgment rendered in this case; therefore, it is not reversible error. Accordingly, this issue is without merit.
 

 III. Jury Instructions
 

 ¶ 33. Fountain argues the trial court committed plain error in two of the
 
 *923
 
 jury instructions given. When considering a challenge to a jury instruction on appeal, “this Court does not review jury instructions in isolation; instead, jury instructions are reviewed as a whole.”
 
 Morgan v. State,
 
 995 So.2d 812, 816 (¶ 12) (Miss.Ct. App.2008) (citations omitted). “Accordingly, this Court will not find reversible error where, when read as a whole, the jury instructions ‘fairly announce the law of the case and create no injustice.’ ”
 
 Id.
 
 (quoting
 
 Foley v. State,
 
 914 So.2d 677, 686 (¶ 14) (Miss.2005)).
 

 ¶ 84. Fountain did not object to either instruction during the trial. However, he argues the instruction should be reviewed under the plain-error doctrine. Appellate courts will “only address[ ] issues on plain[-]error review when the error of the trial court has impacted upon a fundamental right of the defendant.”
 
 Sanders v. State,
 
 678 So.2d 663, 670 (Miss.1996). Thus, the plain-error doctrine’s two-part test requires: “(i) an error at the trial level[,] and (ii) such an error resulted in a manifest miscarriage of justice.”
 
 Stephens v. State,
 
 911 So.2d 424, 432 (¶ 19) (Miss.2005) (citation omitted).
 

 A. Response to Jurors’ Question
 

 ¶ 35. Fountain argues the trial court erred in its response to a question by the jury. During deliberations the jury sent the trial judge a note that said: “Can we get a copy of testimony of [M.G.]?” The trial judge responded: “It is not possible to provide the jury a transcript of any testimony. Please rely upon the collective recollection of the jury and continue your deliberations.” Fountain claims the trial court’s response to the jury question “directed the individual jurors to acquiesce to the collective will of the other jurors.” We find the trial court’s instruction did not affect Fountain’s fundamental rights and, thus, does not constitute a manifest miscarriage of justice. The importance of the response was to inform the jury it would not be provided with a transcript of M.G.’s testimony. Fountain provides no authority to support his interpretation of the trial court’s instruction of the jury. Furthermore, nothing in the instruction indicates the trial court directed the individual jurors to submit to the will of the jury as a whole. The trial court’s response to the jury question does not constitute plain error, and this issue is without merit.
 

 B. Jury Instruction
 

 ¶36. Fountain also argues the trial court improperly granted jury instruction 12. The jury instruction read as follows:
 

 The Court instructs the Jury that under the law of the State of Mississippi a child under the age of fourteen (14) cannot give consent to the crime of Sexual Battery. Therefore[,] the child’s consent or lack of consent is not a material issue to your decision on Defendant’s guilt or innocence.
 

 Fountain argues jury instruction 12 presumed an act of sexual battery had occurred by introducing the defense of consent, a defense Fountain did not present at trial. We find the jury instruction was not plain error. The instruction was reasonable in light of the evidence in this case. Based on the evidence, the jury could have assumed that there was no evidence presented to suggest M.G. attempted to stop the sexual assault. There was, however, evidence that M.G. had conformed to some of Fountains suggestions, such as shaving her pubic hair. In addition, K.U.’s testimony regarding the continuation of her relationship with Fountain into adulthood could have indicated some level of consent was involved in the sexual abuse. Jury instruction 12 simply instructed the jury that even if it believed M.G. consented to
 
 *924
 
 the assault, she was legally unable to do so. The jury instruction was not plain error. Accordingly, we find this issue to be without merit.
 

 IV. Motions for a Directed Verdict, JNOV, and New Trial
 

 ¶ 37. In his final assignment of error, Fountain argues the trial court erred by denying his motions for a directed verdict, JNOV or, alternatively, a new trial. He argues his motions should have been granted because the verdict was contrary to the overwhelming weight of the evidence, and the evidence presented was insufficient to support the conviction.
 

 ¶ 38. Fountain was convicted of sexual battery under Mississippi Code Annotated section 97-3-95(l)(d) (Rev.2006), which states: “A person is guilty of sexual battery if he or she engages in sexual penetration with ... [a] child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.”
 

 A. Motion for a New Trial
 

 ¶ 39. A motion for a new trial challenges the weight of the evidence.
 
 Bush v. State,
 
 895 So.2d 836, 844 (¶18) (Miss.2005). “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Id.
 
 (citation omitted). On appeal, “the evidence should be weighed in the light most favorable to the verdict.”
 
 Id.
 
 (citation omitted). “When this Court analyzes a jury’s verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact.”
 
 Reeves v. State,
 
 825 So.2d 77, 80 (¶ 8) (Miss.Ct.App.2002).
 

 ¶ 40. In the instant case, the State provided ample evidence of sexual battery, and the jury’s verdict does not present an “unconscionable injustice.” The jury heard testimony from M.G. detailing her sexual abuse at the hands of Fountain, including penetration. The jury also heard the testimony of Investigator Hines, who stated that M.G. knew where certain items would be located in Fountain’s home. Those items included vibrators and nude photographs. In addition, K.U. testified to her prior sexual abuse by Fountain, thus establishing a motive to commit the crime.
 

 ¶ 41. A jury is entitled to believe or disbelieve the testimony of any witness.
 
 Moore v. State,
 
 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007). In this case, the jury choose to believe the testimony of M.G. and other evidence that supported her allegations. Furthermore, the jury was entitled to disbelieve Fountain’s testimony in which he denied the allegations of both M.G. and K.U. We do not find the jury’s decision was against the overwhelming weight of credible evidence, nor does it constitute an unconscionable injustice. This issue is without merit.
 

 B. Motion for Directed Verdict or for a JNOV
 

 ¶ 42. A motion for a directed verdict or for a JNOV implicates the sufficiency of the evidence.
 
 Bush,
 
 895 So.2d at 843 (¶ 16). In reviewing a motion for a directed verdict or for a JNOV, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 

 ¶ 43. As discussed above, the State provided sufficient evidence to support the jury’s verdict. Fountain argues
 
 *925
 
 the evidence was insufficient because the State did not produce any DNA evidence to prove the abuse. In fact, the items from Fountain’s house were tested, and no DNA evidence from M.G. was present. While DNA evidence certainly supports a conviction, it is not absolutely necessary to support a guilty verdict. Because of the inherent secrecy involved in child-abuse cases, there is often little evidence other than the child’s testimony to support conviction. To require DNA evidence in these cases would virtually abolish crimes involving child abuse. Furthermore, M.G.’s testimony that condoms were used explains the lack of DNA on items found within Fountain’s home. For the foregoing reasons, we find this issue is without merit.
 

 ¶ 44. THE JUDGMENT OF THE JACKSON COUNTY CIRCUIT COURT OF CONVICTION OF FOUR COUNTS OF SEXUAL BATTERY AND SENTENCE OF THIRTY YEARS FOR EACH COUNT WITH THE SENTENCES TO RUN CONCURRENTLY ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION AND TO PAY A $10,000 FINE FOR EACH COUNT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JACKSON COUNTY.
 

 LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Actual names are not revealed in sexual-abuse cases.
 

 [2]
 

 . We note that Surian later married Gollott and changed her last name; however, for the purposes of this opinion, we refer to her as Surian.