# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-01343-COA

**TRAVIS CORTEZ TATE A/K/A TRAVIS TATE A/K/A TRAVIS C. TATE**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 10/26/2020 |
| TRIAL JUDGE: | HON. GERALD W. CHATHAM SR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MICHAEL HADEN LAWYER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALLISON ELIZABETH HORNE |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/16/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., GREENLEE AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A DeSoto County Circuit Court jury convicted Travis Cortez Tate of one count of fondling a child under the age of sixteen in violation of Mississippi Code Annotated section 97-5-23(1) (Supp. 2015) (Count I) and one count of sexual battery of a child under the age of sixteen in violation of Mississippi Code Annotated section 97-3-95(1)(c) (Rev. 2014) (Count II). For Count II, the circuit court sentenced Tate to forty years in the custody of the Mississippi Department of Corrections (MDOC), with ten years suspended and thirty years to serve, and imposed a term of ten years of post-release supervision. For Count I, the court sentenced him to fifteen years, with fifteen years suspended pending future good behavior,

which was set to run concurrently with his sentence in Count II.

¶2.     Tate appeals, arguing that the circuit court erred by (1) admitting into evidence Tate's prior conviction of sexual battery, (2) excluding evidence of the victim's prior drug use, and (3) admitting into evidence Tate's written statement provided to law enforcement.  He also contends the verdict is against the overwhelming weight of the evidence.  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶3.     A DeSoto County grand jury indicted Tate for one count of fondling a child under the age of sixteen (Count I) and one count of sexual battery of a child under the age of sixteen (Count II).  A jury trial was held on August 24, 2020.  At the pretrial motions hearing, the State moved to introduce evidence of a prior conviction of sexual battery on the basis that the facts were similar to those in the current case.  The court granted the motion, finding the evidence was relevant and admissible.  The circuit court also granted the State's motion in limine to exclude evidence of the defendant's and the victim's alleged use of marijuana on the night of the sexual assault, finding the evidence was not relevant.

¶4.     The victim, Jane,[1] testified that in October 2018, she was sleeping overnight at her aunt's house when she awoke to find Tate "touching" her on her "legs" and "private area." She was fifteen years old at the time.  Jane said she told Tate "to stop," and she went back to sleep.  Later that evening, however, she awoke again to find Tate with "his hand down on [her] private area[.]"  She "tried to push it away but he was pushing up against [her] hand."

---

[1] The victim's name has been changed to protect her identity.

Jane testified that she "then felt pain" and that Tate "had put his private area in [her] private area," which she clarified was his penis/her vagina. Jane further testified that when she told Tate she was a virgin, "he told me that I wasn't anymore." Jane stated that afterward, Tate asked her a couple of times to put her "mouth on his private part," but she refused; so he "eventually just went away."

¶5. On cross-examination, Jane admitted that she did not tell anyone about the assault until May 2019 when she reported it to a school officer. She said that her cousin John[2] was in the room when the assault occurred and that she tried to tell him what had happened, but she did not "think he understood what [she] was trying to say." Jane noted that John sat up when the assault took place, but she did not think he could see what was happening since it was dark. She was also unsure if he could hear anything.

¶6. Detective Jeff Logan with the DeSoto County Sheriff's Department testified that he had worked on over a thousand sexual-abuse cases and that it was "not uncommon for a victim of sexual abuse to wait a long period of time before they come forward." When he attempted to interview Jane, Detective Logan said she was so "distraught" that she was "incapable of talking to [him]"; so he set up a forensic interview with a child-advocacy center. During that interview, Jane stated that she had gone to sleep in her cousin's room, that she was awoken by Tate, and that Tate told her that she was not a virgin anymore. When she went to the bathroom, she was bleeding from her vagina. Detective Logan attempted to interview John, but the boy "wouldn't talk to me or couldn't talk to me." When Jane's aunt

---

[2] Because he was a minor, Jane's cousin has also been given a fictitious identity.

told the detective that John "had some kind of mental handicap," the officer "didn't push for any more answers from him." Detective Logan said no one else in the family talked to him.

¶7. After three tries, the detective finally found Tate at home. Tate preferred not to come to the station; so they talked in Tate's front yard. The detective testified that Tate eventually admitted "that he'd had sex with [Jane] at her aunt's house," but the confession was not recorded because the batteries in the detective's recorder apparently had died. Detective Logan said Tate did provide a signed written statement that he had "consensual sex" with Jane at her aunt's house. The detective read Tate a *Miranda*[3] rights waiver form, which Tate initialed and signed. Although the defense objected to the waiver form as to its voluntariness, the court admitted the form into evidence. The circuit court also allowed the admission of Tate's written statement into evidence over defense counsel's objections on the bases that proper predicate had not been laid, that the statement was given under duress, and that it was hearsay. On cross-examination, Detective Logan said that Tate understood the *Miranda* waiver form "because I asked him do you understand. . . . If you don't understand it, ask me, and I'll explain that to you. That's standard. I say that for every one."

¶8. Detective Logan also testified that he ran a background check on Tate and discovered "[t]hat he had been previously convicted of sexual battery of a child." Detective Logan was shown the certified copy of Tate's prior conviction from Tennessee for sexual battery. Over the defense's objection that the detective could not testify as to the authenticity of the document, the court admitted the evidence, noting its former evidentiary ruling "that it meets

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

all the tests of [Rules] 403 and 404 of the Mississippi Rules of Evidence[.]"

¶9. The defense moved for a directed verdict, arguing that there was "no physical evidence" to support the charges. Defense counsel also asserted that the victim "contradicted herself in testimony"; so "her testimony should be discounted as such." The circuit court denied the motion, and the defense proceeded to call its witnesses. Jane's aunt testified that Jane was "[a] liar" and "likes to tell stories." Jane's cousin John, who is Tina's son, testified that Jane liked Tate and "tried to get with him." He stated that Jane got into bed with Tate, but Tate was asleep because John could hear him snoring. John said Jane later told him that Tate "raped her, but [he] didn't believe it because [he] was there the whole night." On cross-examination, John admitted that the trial was the first time he made any statement regarding the incident. The defense rested.

¶10. Tate was convicted of both counts. On September 2, 2020, Tate filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, alleging (1) the circuit court erred in granting the State's motion to admit his prior conviction at trial; (2) the court erred in granting the State's motion in limine excluding "any reference to the parties' smoking marijuana at the time of the alleged incident"; (3) the court erred in admitting Tate's written statement; (4) the verdict was against the weight of the evidence; and (5) the court erred in denying his motion for a directed verdict. On October 26, 2020, the circuit court sentenced Tate to forty years in the custody of the MDOC for Count II, with ten years suspended, and thirty year to serve, and imposed ten years of post-release supervision. For Count I, the court sentenced Tate to a concurrent fifteen-year suspended sentence. The

circuit court subsequently denied Tate's post-trial motion nunc pro tunc to October 26, 2020. Aggrieved, Tate appeals.

## DISCUSSION

### I. Whether the circuit court erred in the admission or exclusion of evidence.

¶11. The first three assignments of error involve the circuit court's admission or exclusion of certain evidence. Our Court has recognized that "[a] trial court has great latitude in [the] admission or exclusion of evidence where the question is one of materiality or relevancy[.]" *Watkins v. State*, 29 So. 3d 807, 810 (¶7) (Miss. Ct. App. 2009). Thus, "[a]n error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Aguilar v. State*, 955 So. 2d 386, 392 (¶19) (Miss. Ct. App. 2006).

### A. Tate's Prior Conviction of Sexual Battery

¶12. At trial, the State moved to introduce evidence of a prior sexual-battery conviction in Tennessee because the facts were similar to the current case. Defense counsel objected to the evidence on the basis that it was "extremely prejudicial" because the two crimes were brought under different statutes. Defense counsel also argued that "one single incident does not make a pattern." The court ruled the evidence was relevant and admissible and later allowed the certified copy of Tate's conviction to be admitted as evidence over the defense's objection on the grounds of authentication of the evidence and hearsay.

¶13. With limited exceptions, the Mississippi Rules of Evidence prohibit the use of "[e]vidence of a person's character or character trait" to prove that "the person acted in

6

accordance with the character or trait." MRE 404(a)(1). The circuit court determined the evidence of Tate's prior conviction was admissible under Mississippi Rule of Evidence 404(b)(2), which provides, "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The court further found this case on "all fours" with the Mississippi Supreme Court's holding in *Young v. State*, 106 So. 3d 775 (Miss. 2012), which addressed the admissibility of evidence that a defendant had sexually assaulted his stepsister years before. *Id*. at 778 (¶12). In *Young*, the supreme court concluded:

> [T]he trial court here did not abuse its discretion by admitting evidence of Young's previous sexual abuse of another prepubescent female family member, because the evidence was admissible for noncharacter purposes. Those purposes include establishing that Young's motive was a "seemingly uncontrollable desire to partake in pedophilic sexual activities with young and developing female juveniles" and that both assaults were part of a "common plan, scheme, or system" that involved Young taking advantage of family relationships to engage in sexual activities with prepubescent girls.

*Id*. at 780 (¶17).

¶14. Tate argues—for the first time on appeal—that the evidence should not have been admitted because the State "never discussed the facts of that case in front of the jury," even though the State "claimed that [the prior conviction] was being admitted for the purpose of showing proof of 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]'" Tate contends, "Without knowing what the similarities of the facts in both cases are, the jury could only use that evidence for propensity." In *Brown v. State*, 854 So. 2d 1081, 1085 (¶13) (Miss. Ct. App. 2003), this Court held that "[w]hen a defendant does not object on the same grounds being raised in an argument on appeal, the

7

issue is waived."

¶15.    Waiver notwithstanding, we find the circuit court's ruling was not an abuse of discretion.   Although the certified copy of the prior conviction that was admitted into evidence did not contain specific details of the incident, nor did Detective Logan testify in that regard, the State did assert in its closing argument to the jury:

> You also have the defendant's prior conviction for sexual battery in evidence. And there's a jury instruction that tells you what purpose you can look at that conviction for, and it's for limited purposes to show a common plan, scheme, opportunity, intent, motive.
>
> In that case the victim was 14 years old, and he was 18 years old.  In our case the victim is 15 years old, and he's 22 years old.  I would submit to you that he is targeting young girls.  That shows a plan, scheme, an opportunity, a motive, and intent.  That's what you can consider this conviction for.  Only that.

The defense made no objection to this argument.  The appropriate limiting instruction was also given to the jury (S-6).  The instruction stated:

> The Court instructs the Jury that evidence of a prior crime that the Defendant has committed is not admissible to prove the character of the Defendant in order to show that he acted in conformity with that character on that particular occasion.  However, evidence of a prior crime committed by the defendant is admissible for limited purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

*See Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008) (holding that evidence of a prior sexual offense involving "a victim other than the victim of the charged offense . . . if properly admitted under Rule 404(b), filtered through Rule 403, *and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury*, should not be considered per se error") (emphasis added)).  Therefore, we find no merit to Tate's argument.

8

¶16. Tate also contends that this evidence was not properly authenticated. Because the conviction from Tennessee was certified by the clerk as custodian of record and bore her signature, we find that it was admissible as self-authenticating evidence under Mississippi Rule of Evidence 902(4)(A).

### B. Evidence of the Victim's Alleged Marijuana Use

¶17. The State filed a motion in limine to exclude evidence of both the defendant's and the victim's alleged use of marijuana on the night of the incident. The State argued that the evidence was irrelevant to the sexual-battery charge, was "improper character evidence," and that consent was not a valid defense to the charged crime. The circuit court granted the motion, finding the evidence was not relevant because the identity of the defendant and consent were not at issue. Appealing the court's ruling, Tate argues that the exclusion of this evidence deprived him of his right to "put on a defense" because he could not "cross-examine the victim about her use of drugs."

¶18. At trial, the defense argued that the evidence "would allow the jury to fully understand [Jane's] state of mind on the date the alleged incident occurred and things that may impact and weigh her statement." We find Jane's state of mind was irrelevant as consent is not a required element of the charges against Tate, which the trial court recognized in its findings. *See* Miss. Code Ann. § 97-5-23(1); Miss. Code Ann. § 97-3-95(1)(c); *accord Moore v. State*, 160 So. 3d 728, 734 (¶27) (Miss. Ct. App. 2015) (holding that "[l]ack of consent is not an element" under section 97-3-95(1)(c)). Furthermore, with regard to the defense's argument that the evidence was relevant as to the witness's credibility, the supreme court has found,

"We fail to see how . . . marijuana use . . . ha[s] any bearing on a person's truthfulness." *Johnston v. State*, 618 So. 2d 90, 94 (Miss. 1993); *see also Hickman v. State*, 73 So. 3d 1156, 1161 (¶18) (Miss. 2011) (upholding trial court's ruling to exclude testimony that a witness "was 'waiting on some marijuana,'" as it "had no bearing on her truthfulness"). Therefore, we find no abuse of discretion in the circuit court's ruling to exclude this evidence.

### C.    *Tate's Written Statement*

¶19.    At trial, the defense objected to the admission of Tate's written statement provided to Detective Logan, arguing that Tate "denie[d] that he signed [it]," that he did "not recall this event," and "that the statement was made under duress." Overruling the objections, the circuit court determined that the written statement was admissible. Tate asserts on appeal that the court failed to inquire into the voluntariness of the statement. Specifically, he notes that the officer failed to obtain a recording of his interview and that the written statement was "a one-sentence, misspelled mess" with an incorrect date. Tate also contends that he was informed by the detective that consent was a defense to the charge against him. Thus, "the totality of the circumstances does not overwhelming[ly] indicate that the statement made by the defendant was voluntary."

¶20.    The State bears the burden "to prove the voluntariness of [a defendant's] confession." *Hamer v. State*, 318 So. 3d 1173, 1178 (¶15) (Miss. Ct. App. 2020) (citing *Scott v. State*, 8 So. 3d 855, 861 (¶24) (Miss. 2008)). The State can "make[] out a prima facie case . . . on the question of voluntariness" through "the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats,

10

coercion, or offer of reward." *Id*. (quoting *Scott*, 8 So. 3d at 861 (¶24)). If the accused offers "testimony to the contrary, . . . the State must offer the testimony of the officers who witnessed the confession." *Id*. (quoting *Scott*, 8 So. 3d at 861 (¶24)). "The circuit court must find beyond a reasonable doubt that a confession was knowingly, intelligently, and voluntarily given and that before a defendant's custodial interrogation, he was administered his *Miranda* rights." *Id*. (citing *Scott*, 8 So. 3d at 861 (¶23)).

¶21. We find no merit to Tate's claims that his statement was involuntary. First, as the State notes, Tate filed no motion to suppress his statement prior to trial. Furthermore, Detective Logan testified that he read Tate his *Miranda* rights. The *Miranda* waiver form was entered into evidence, signed and initialed by Tate. Detective Logan then testified that Tate voluntarily signed his statement. The detective did acknowledge that he had to later amend the date on the statement because Tate had written his birth date instead of that day's date. The detective put his own initials by the date change to show that it had been changed. Detective Logan also explained why the interview was not recorded (i.e., batteries in the recorder were dead).

¶22. We further agree with the circuit court's determination that "no evidence of coercion" was presented to support Tate's claim of duress. The testimony showed that Tate gave the statement while standing in his own yard, and the detective testified that Tate was not under arrest at that time. Additionally, there was no evidence that Tate was told that consent was a defense to the charges, and defense counsel did not cross-examine Detective Logan regarding this claim. In fact, this particular argument was not raised at trial; therefore, it is

11

procedurally barred from consideration on appeal. *See Brown*, 854 So. 2d at 1085 (¶13). We find no error in the circuit court's ruling that Tate's written statement was admissible.

## II. Whether the verdict was against the overwhelming weight of the evidence.

¶23. Tate contends that the verdict was against the overwhelming weight of the evidence because Jane was the only person who testified the sexual assault happened, and she waited months before telling anyone it happened, although there were other persons in the house at the time. Tate further notes that the detective conducted very little investigation into the claim.

¶24. In *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017), the supreme court clarified that an appellate court's role "is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Tate was charged with violating Mississippi Code Annotated sections 97-5-23(1) and 97-3-95(1)(c). Section 97-5-23(1) defines "fondling" as follows:

> Any person above the age of eighteen (18) years, who, for the purpose of gratifying his or her lust, or indulging his or her depraved licentious sexual desires, shall handle, touch or rub with hands or any part of his or her body or any member thereof, or with any object, any child under the age of sixteen (16) years, with or without the child's consent[.]

Section 97-3-95(1)(c) defines "sexual battery" as "engag[ing] in sexual penetration with . . . [a] child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child[.]"

¶25. Jane testified that Tate had touched her around her "legs" and "private area" and "had

12

put his private area in [her] private area[.]" The supreme court has held that "the unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Miley v. State*, 935 So. 2d 998, 1001 (¶10) (Miss. 2006). Indeed, the aunt's testimony that Jane is a "liar," along with John's testimony that Jane was the aggressor and that he did not hear anything that sounded like sex that night, contradicted Jane's testimony. Yet there was also testimony by the detective that he was informed John was "somehow mentally handicapped."

¶26. "[W]hen the evidence is conflicting, the jury will be the sole judge of the credibility of witnesses and the weight and worth of their testimony." *Little*, 233 So. 3d at 292 (¶20) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). The jury in this case, "having the benefit of observing the demeanor and expressions of the witnesses," evidently found Jane's testimony more credible than that of the other witnesses. *Price v. State*, 898 So. 2d 641, 652 (¶25) (Miss. 2005); *see also Fountain v. State*, 85 So. 3d 913, 924 (¶41) (Miss. Ct. App. 2012) (recognizing jury's "entitle[ment] to disbelieve" defendant's denial of sexual-assault victims' allegations). "This Court recognizes that a jury's verdict will generally be given great weight." *Eason v. State*, 994 So. 2d 785, 790 (¶13) (Miss. Ct. App. 2008).

¶27. Regarding Jane's delay in reporting the assault, Tate failed to mention that Jane had told John, but he either did not understand her or believe her. Detective Logan also explained in his testimony that it is "not uncommon" for a victim of a sexual assault to "wait a long period of time" before reporting the abuse. Detective Logan did try to interview other family members, but no one would talk to him. Further, the detective noted that the reason

13

no physical evidence was collected (e.g., rape kit or DNA) was because of the length of time (seven months) between the assault and the investigation, and Tate does not assert on appeal what information any further investigation would have revealed.

¶28.    Accordingly, we do not find that the verdict was against the overwhelming weight of the evidence, and we affirm the judgment of the circuit court.

¶29.    **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**